UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUTH H-Z.,

            Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

**DECISION AND ORDER**

1:20-CV-01859 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Ruth H-Z. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 14), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 14) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on August 14, 2018. (Dkt. 10 at 18, 139-145).[1] In her application, Plaintiff alleged disability beginning June 30, 2010. (*Id.* at 18, 139). Plaintiff's application was initially denied on December 10, 2018. (*Id.* at 18, 77-88). At Plaintiff's request, a telephone hearing was held before administrative law judge ("ALJ") Asad M. Ba-Yunus, on April 27, 2020. (*Id.* at 10, 29-63). On May 4, 2020, the ALJ issued an unfavorable decision. (*Id.* at 18-25). Plaintiff requested Appeals Council review; her request was denied on December 1, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-9). This action followed.

## LEGAL STANDARD

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2016. (Dkt. 10 at 20). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from her alleged onset date of June 30, 2010, through her date last insured of December 31, 2016. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the following medically determinable impairments: asthma, thyroid disease, and rheumatoid arthritis. (*Id.*). Through the date last insured, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that limited her ability to perform basic work-related activities for 12 consecutive months and therefore, did not have a severe impairment or combination of impairments. (*Id.*). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date last insured. (*Id.* at 24).

## II.   Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ failed to properly evaluate Plaintiff's medically determinable impairment at step two of the sequential analysis. As further explained below, the Court finds that remand is required.

Plaintiff's sole argument is that the ALJ, in considering her impairments at step two of the sequential analysis, erred by not identifying her rheumatoid arthritis as a severe impairment. (Dkt. 13-1 at 6-9). In response, the Commissioner argues that substantial evidence supports the ALJ's determination that Plaintiff's rheumatoid arthritis was successfully treated and did not significantly limit her ability to perform basic work activities for a period of at least 12 months, as is required to be considered a severe impairment. (Dkt. 14-1 at 5-16).

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the

Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). "The following are examples of 'basic work activities': 'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citations omitted), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012).

"The claimant bears the burden of presenting evidence establishing severity." *Id.* Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *see also McIntyre v. Colvin,* 758 F.3d 146, 151 (2d Cir. 2014) ("[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."); *O'Connor v. Saul*, No. 1:18-CV-00740 CJS, 2020 WL 1242408, at *3 (W.D.N.Y. Mar. 16, 2020) ("The standard at step two is quite low."). However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018)

(quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)) (alteration in original); *Lugo Rodriguez v. Berryhill*, No. 3:17-CV-00093 (VLB), 2018 WL 1135330, at *4 (D. Conn. Mar. 2, 2018) ("In other words, any claim in which the medical evidence establishes more than a 'slight abnormality' with 'no more than a minimal effect on an individual's ability to work' should be determined 'severe.'" (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987)). Further, a severe impairment must persist for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (disability involves impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). "[A]ny error at step two is rendered harmless when the ALJ finds that a claimant has other severe impairments and proceeds through the later steps of the sequential analysis." *Herman S. v. Comm'r of Soc. Sec.*, No. 1:19-CV-00210 EAW, 2022 WL 71618, at *5 (W.D.N.Y. Jan. 3, 2022).

For an ALJ to stop at step two and not continue to the remaining steps is "an unusual case." *Dawn Lyn C. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00545 (TOF), 2021 WL 4398372, at *1 (D. Conn. Sept. 27, 2021) ("ALJs frequently find some or all of a claimant's impairments to be less than severe. But they usually go on to conduct the rest of the five-step process, and often find that the claimant possesses the residual functional capacity to perform work that is available in the national economy. Here, however, the ALJ stopped at Step Two."); *Hudson v. Bowen*, 870 F.2d 1392, 1396 (8th Cir. 1989) ("Thus, the sequential evaluation process can be terminated at step two only in cases where there is no more than a minimal effect on the claimant's ability to work."). Indeed, Social Security

regulations advise that "[a] claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." *Titles II & Xvi: Med. Impairments That Are Not Severe*, SSR 85-28, at *3 (S.S.A. 1985). The regulations further provide:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

*Id.* at *4; *see also McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004) ("Instead, we express only the common-sense position that because step two is to be rarely utilized as basis for the denial of benefits, . . . its invocation is certain to raise a judicial eyebrow.").

As explained above, at step two the ALJ found that Plaintiff suffered from the non-severe impairments of asthma, thyroid disease, and rheumatoid arthritis. (Dkt. 10 at 20). Plaintiff argues that the ALJ's conclusion that her rheumatoid arthritis was not a severe impairment is not supported by substantial evidence and was error warranting remand. The Court agrees.

The ALJ cited medical evidence in the administrative record relating to Plaintiff's rheumatoid arthritis, which spanned over the course of multiple years, as part of his analysis. He noted that plaintiff had an initial rheumatological evaluation with Mark E.

Schulte, M.D., of Rheumatology Consultants of WNY, P.C., on January 31, 2011, at which she reported progressive swelling, stiffness, and pain in the joints of her hands, wrists, and feet since January of 2009, which had progressed in the six months prior to the appointment. (Dkt. 10 at 400). She also reported numbness and tingling in her hands with partial improvement from a warm shower, activity throughout the day, and ibuprofen. (*Id.*). Dr. Schulte noted that Plaintiff had inflammatory polyarthritis consistent with rheumatoid arthritis and prescribed Prednisone and Methotrexate. (*Id.* at 400-01).

A July 1, 2011 treatment note with Dr. Schulte reflects Plaintiff's report that she was 90% improved overall. (*Id.* at 396). She reported having occasional pain in the hands and feet with activity, but had been active without significant limitation. (*Id.*). Dr. Schulte noted that Plaintiff was "clinically much improved." (*Id.*).

On a February 3, 2012 follow up, Plaintiff indicated that she had done well since her last visit. (*Id.* at 392). She reported minimal morning stiffness although noted that she was not being very active in the mornings. (*Id.*). On June 8, 2012, Plaintiff indicated having to stop her medication for a short time due to an infection and reported worsening stiffness and mild joint swelling, which improved shortly after resumption of the medication. (*Id*. at 390). She reported being active without limitation. (*Id.*). An October 12, 2012 treatment record reflects that Plaintiff was doing well without a recent flare of joint swelling and stiffness and though she noted mild achiness in her hands following work, she was not limited to a significant degree. (*Id.* at 381).

On February 8, 2013, Plaintiff was seen for a follow up and reported no recent flare and that she had been active without limitation. (*Id*. at 377). On June 28, 2013, and again

on November 11, 2013, she reported some mild worsening stiffness in her hands lasting about one hour each morning but indicated that she was not limited by the symptoms and took nothing for the pain. (*Id.* at 375).

On March 10, 2014, Plaintiff reported having stopped her medications as a result of dental issues, but restarted after completing her antibiotics. (*Id.* at 371). On July 7, 2014, Plaintiff reported mild stiffness in the hands and feet without swelling or erythema. (*Id.* at 362). On November 3, 2014, she again reported mild stiffness in the hands and feet without swelling or erythema, but had been active without limitation. (*Id.* at 359).

At a March 2, 2015 visit with Dr. Schulte, Plaintiff advised that she had temporarily stopped her medications due to an upper respiratory infection but was back on the medication and reporting little morning stiffness and no joint swelling. (*Id.* at 355). But on June 10, 2015, Plaintiff reported worsening stiffness and mild swelling in her hands since reducing her dose of Methotrexate. (*Id.* at 351). She returned to a higher weekly dose but did not notice a significant change. (*Id.*). On September 30, 2015, Plaintiff reported a compete resolution of her joint symptoms after a medication change to her thyroid hormone replacement dose. (*Id.* at 345).

On January 27, 2016, Plaintiff reported doing well but with mild stiffness in her hands and feet without swelling or erythema. (*Id.* at 341). A May 25, 2016 treatment record reported unchanged symptoms with continued mild stiffness in the hands and feet. (*Id.* at 335). On October 4, 2016, Plaintiff reported having marked worsening stiffness of

her hands and wrists after a delay in getting an Enbrel injection, but that her symptoms were resolved upon receipt of the injection. (*Id.* at 326).

At a January 9, 2017 appointment with Dr. Schulte, Plaintiff indicated that she continued to do well with only mild stiffness in her hands and feet without significant swelling. (*Id.* at 321). A May 16, 2017 treatment note reported mild stiffness in the hands and feet. (*Id.* at 316). Plaintiff tried to taper her medication but noticed worsening stiffness in the hands which resolved after increasing the dose. (*Id.*).

In November 2018, Dr. Schulte opined that Plaintiff had fairly good control of her inflammation but continued to have activity-related pain and stiffness in her hands which limited her ability to return to work. (*Id.* at 402 ("Despite fairly good control of inflammation over time, Ruth continues to have activity related pain and stiffness in the hands limiting her ability to return to work.")). He noted that she has "been successful at modifying her routine at home to avoid significant flares of symptoms, however, would likely not be able to return to gainful employment." (*Id.*). In April 2020, Dr. Schulte also prepared a medical source statement form. (*Id.* at 483). In the form, he opined that Plaintiff could lift and carry less than five pounds; use her hands to grasp, turn, and twist objects ten percent of an eight hour working day; and use her arms for reaching in front of her body and overhead twenty percent of an eight hour working day. (*Id.* at 484). Dr. Schulte concluded that Plaintiff's limitations were present as of December 31, 2016. (*Id.*). The ALJ did not find Dr. Schulte's opinions persuasive on grounds that they were directly and completely contradicted by his treatment notes prior to and after December 31, 2016, with

the exception of a few brief flare-ups related to temporary stoppages of her medication. (*Id.* at 24).

The ALJ also considered the opinion of state agency medical consultant D. Brauer. (*Id.* at 64-70). Dr. Brauer opined that Plaintiff's impairments were not severe. (*Id.* at 68). The ALJ found Dr. Brauer's opinion fairly persuasive, acknowledging that his opinion was not based on a direct examination of Plaintiff but was consistent with the medical evidence of record through the date last insured.

As a result, although the ALJ found that Plaintiff's medically determinable impairments could have reasonably been expected to produce the alleged symptoms, he found that her statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent. (*Id.* at 21). He concluded that through her date last insured, she did not have a medically determinable impairment that was severe. (*Id.* at 24).

While an error at step two is harmless when an ALJ identifies other severe impairments, proceeds past step two, and considers the effects of all the claimant's impairments through the remainder of the sequential evaluation, *see Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013), by stopping at step two, the ALJ did not undertake such an analysis in this case. Accordingly, the question here is whether the medical evidence established that Plaintiff's rheumatoid arthritis was clearly insubstantial so as to justify the ALJ's determination to stop at step two. *Dawn Lyn C.*, 2021 WL 4398372, at *5 ("The ALJ's decision to reject the Plaintiff's claim at Step Two should be affirmed if there is sufficient evidence in the record – of the sort that a reasonable mind

might accept – for the proposition that the Plaintiff's [claimed impairment] is a *de minimis* or 'clearly insubstantial' one, and reversed if there is not.").

In a recent case from the District of New Jersey, *Oeser v. Saul*, No. 1:19-CV-16286, 2021 WL 1976693 (D.N.J. May 18, 2021), the ALJ determined that the plaintiff did not have a severe impairment and stopped his analysis at step two. *Id.* at *4. The court found that the ALJ did not properly apply the *de minimis* screening standard where there was objective medical evidence in the record supporting Plaintiff's subjective claims of impairment, she took ibuprofen to relieve pain, and her treating chiropractor, who she received care from every six to eight weeks for a period of years, opined that she was incapable of employment. *Id.* at *5. In *Oeser*, despite finding that plaintiff's impairments "could have been reasonably expected to produce the alleged symptoms," the ALJ "focused on Plaintiff's treatment history, characterizing her treatment as 'limited, conservative care' and observing that Plaintiff 'has not required emergency room treatment or hospitalization for exacerbation of her symptoms during the period at issue.'" *Id.* at *6. The district court concluded that by relying on the plaintiff's conservative treatment, "the ALJ appears to have imported to step two the analysis appropriate at later stages of the sequential evaluation." *Id.*

Likewise, in *McCrea,* 370 F.3d 357, the Third Circuit remanded a benefits application where the ALJ acknowledged evidence supporting the severity of plaintiff's claim but minimized its importance. *Id.* at 361-62. The ALJ focused on the mild abnormalities present, pointed out that plaintiff's "complaints of pain were most commonly met with directions to take non-steroidal anti-inflammatory medications such as Naprosyn,

Advil, and Motrin," and refused to afford significant weight to the opinion of her treating provider on grounds that the drastic limitations suggested by the provider were inconsistent with the medical evidence of record and conservative treatment prescribed. *Id.* at 362. The Third Circuit concluded that "[a]lthough the observations made by the ALJ may or may not be relevant in later steps of the sequential analysis, . . . they certainly do not carry the day at step two," and that when considering the record in its entirety, "no reasonable person could fail to conclude that [plaintiff's] physical conditions were 'severe' under the *de minimis* interpretation of that term currently endorsed by the Commissioner." *Id.*

Similarly here, the ALJ concluded that Plaintiff's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms," (Dkt. 10 at 21), but focused on Plaintiff's treatment history and ability to manage her condition through medication to negate the severity of the underlying impairment. While the ALJ's step two determination is entitled to deference if it is free from error and supported by substantial evidence, the Court concludes that a finding that Plaintiff's rheumatoid arthritis so clearly insubstantial to not meet the *de minimis* standard is not supported by substantial evidence. To be sure, the treatment records reflect entries showing that Plaintiff's rheumatoid arthritis was responding well to medication and that her activities of daily living were largely unrestricted. But the records also document a years-long history of rheumatoid arthritis for which Plaintiff was treated regularly by a specialist and prescribed medication. Moreover, Plaintiff's specialist noted that the impairment had forced Plaintiff to stop working in 2010 and that her significant flares of symptoms had been reduced by her ability to modify her routine at home, which he opined she would be unable to do in

the workplace. (Dkt. 10 at 402). On these facts, the ALJ's determination at step two was error. *See Dawn Lyn C.*, 2021 WL 4398372, at *8 ("Viewing the record in its entirety, and considering the "low," "*de minimis*" standard that applies here, the Court concludes that the ALJ's decision to reject the Plaintiff's claim at Step Two is not supported by substantial evidence."). Accordingly, remand is justified.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 14) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: July 8, 2022
      Rochester, New York